USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/24/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

SECURITIES INVESTOR PROTECTION :
CORPORATION, :
:     1:17-cv-4952-GHW
:     1:17-cv-4972-GHW
:
Plaintiff-Applicant , :
:     <u>MEMORANDUM OPINION</u>
:     <u>AND ORDER</u>
-v- :
:     Adv. Pro. No. 08-07189 (SMB)
BERNARD L. MADOFF INVESTMENT :     SIPA LIQUIDATION
SECURITIES LLC, :     (Substantively Consolidated)
:
Defendant. :
------------------------------------------------------- :
In re: :
:
BERNARD L. MADOFF, :
:
Debtor. :
------------------------------------------------------- :
IRVING PICARD, Trustee for the Liquidation :
of Bernard L. Madoff Investment Securities LLC,:
:     Adv. Pro No: 10-04417 (SMB)
Plaintiff, :
:     17-CV-4952-GHW
-v- :
:
THE LUSTIG FAMILY 1990 TRUST, et al. :
:
Defendants. :
------------------------------------------------------- :
IRVING PICARD, Trustee for the Liquidation :
of Bernard L. Madoff Investment Securities LLC,:
:     Adv. Pro No: 10-04554 (SMB)
Plaintiff, :
:     17-CV-4972-GHW
-v- :
:
DAVID IVAN LUSTIG, :
:
Defendant. :
------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Defendants The Lustig Family 1990 Trust (the " Lustig Trust"), and David I. Lustig ("Lustig"), individually and in his capacity as trustee for the Lustig Trust (together, "Defendants" or the "Lustig Defendants"), move pursuant to 28 U.S.C. § 158(a)(3) for leave to appeal the Bankruptcy Court's Memorandum Decision Granting Partial Summary Judgment Striking Certain Affirmative Defenses ("Bankruptcy Decision"). Because the proposed appeal requires a fact-intensive inquiry by the Court, Defendants' motion for leave to appeal the Bankruptcy Decision is DENIED.

## II. BACKGROUND

### A. The Trustee's Adversary Proceedings Against Defendants

The two adversary proceedings at issue here are among the many lawsuits initiated by Irving Picard, the appointed trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), the company that Bernard L. Madoff used to perpetrate his massive, multi-billion dollar Ponzi scheme. The background of Madoff's Ponzi scheme has been recounted in numerous opinions, and the Court will not restate that background here. *See, e.g.*, *SIPC v. BLMIS (In re BLMIS)*, 424 B.R. 122, 125-32 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 25 (2012).

Defendants Lustig and the Lustig Trust both held accounts with BLMIS. Dkt. No. 4, Defs.' Mem. of Law in Support of Their Mot. for Leave to Appeal ("Defs.' Mot.") at 2, 10. On March 18, 2016, the Trustee initiated two adversary proceedings, one against Lustig individually, and another against the Lustig Trust and Lustig in his capacity as trustee of the Lustig Trust. *See* Dkt. No. 5, Decl. of Brian Ha in Support of Defs.' Mot. for Leave to Appeal ("Ha Decl."), Ex. 2 (Trustee's First Am. Compl. against Lustig); *id.* Ex. 3 (Trustee's First Am. Compl. against the Lustig Trust). The complaints in the adversary proceedings alleged that BLMIS transferred fictitious profits to both

Lustig and the Lustig Trust, and that as a result, the Trustee was entitled to recover those profits for the benefit of those defrauded by BLMIS. *Id.* Specifically, the Trustee alleged that Lustig withdrew $2,000,000 from his BLMIS individual retirement account ("IRA") on July 23, 2007, Ha Decl., Ex. 2 at ¶¶ 31-35, and that on three separate dates in 2007 and 2008, Lustig withdrew $7,000,000 from the Lustig Trust BLMIS account, Ha Decl., Ex. 3 at ¶¶ 32-40. In total, the Trustee asserted that BLMIS transferred $4,241,336 of fictitious profits to the Lustig Trust, and $1,863,225 to Lustig's IRA account. Ha Decl., Ex. 3 at ¶ 34; *id*, Ex. 2 at ¶ 33.

## B. The Defendants' Affirmative Defenses

On May 2, 2016, Defendants filed Answers and Affirmative Defenses to the Trustee's First Amended Complaints in both adversary proceedings. *See* Ha Decl., Exs. 4 and 5. Defendants generally contended that the Trustee was not entitled to recover from either Lustig or the Lustig Trust because although the money was withdrawn from the BLMIS accounts held in their names, those withdrawals were "immediately reinvest[ed] . . . back into BLMIS through a third-party feeder fund called Lakeview Investment, LP ("Lakeview")." Defs.' Mot. at 3. Defendants asserted that Lakeview reinvested the Lustig's deposits in other BLMIS funds, and that, therefore, that money was actually returned to BLMIS. *Id.* at 4. Thus, Defendants asserted, when the Trustee reached a settlement with Lakeview and other feeder funds, he recovered the amounts that he now seeks to recover from Lustig and the Lustig Trust. *Id.* at 1-2.

Based on the argument that the money withdrawn from BLMIS was reinvested, Defendants set forth identical affirmative defenses in their respective answers. The eighth and ninth affirmative defenses asserted that the Bankruptcy Court "should exercise its equitable powers under 11 U.S.C. § 105(a)" and dismiss the Trustee's claims and "grant [Defendants] an equitable credit in the full amount . . . that [Defendants] had returned to BLMIS through their Lakeview investment." *See* Ha Decl., Exs. 4 and 5 at 11-12. The tenth affirmative defense asserted in both cases contended that

the Trustee's claims were an attempt to recover amounts that had already been returned to BLMIS, in violation of 11 U.S.C. § 550(d), the "single-satisfaction rule." *Id.* at 12-13. Finally, the Defendants' eleventh affirmative defense was based on a theory of recoupment, and contended that Defendants were entitled to an offset or credit for the full amount that Lustig and the Lustig Trust had returned to BLMIS through the Lakeview investments. *Id.*

C. The Bankruptcy Court's Decision

On February 28, 2017, the Trustee moved to strike the eighth, ninth, tenth, and eleventh affirmative defenses as legally insufficient pursuant to Rule 12(f), contending that the Bankruptcy Code does not authorize equitable defenses or an "equitable credit" to offset a fraudulent transfer, that the single satisfaction rule is inapplicable to the transfers to the Lustig Defendants, and that the doctrine of recoupment does not apply because the Trustee's claims and the Defendants' claims arise out of different transactions. *See* Ha Decl. Ex. 6 ("Bankruptcy Decision") at 6. At the Bankruptcy Court's suggestion, the parties agreed to treat the Trustee's motion as one for partial summary judgment. *See* Defs.' Mot. at 16-17.

On June 1, 2017, Judge Stuart M. Bernstein granted the Trustee's motion, and entered an order in the Trustee's favor on June 13, 2017. Bankruptcy Decision. The Bankruptcy Court agreed with the Trustee, and held that the Bankruptcy Code does not authorize the Lustig Defendants' invocation of equity as a means to limit the Trustee's recovery. *Id.* at 9. The Bankruptcy Court further determined that the Trustee's claims did not violate the single satisfaction rule because the Trustee recovered money from the funds at issue based on the initial transfers they received from BLMIS, not as subsequent transferees of the Lustig Defendants. *Id.* at 12-13. Finally, after noting the limited application of the recoupment doctrine, the Bankruptcy Court found that the doctrine was not available to the Lustig Defendants because the parties' claims arise from different transactions: the Trustee's adversary proceedings arose from the Lustig Defendants' withdrawals

4

from their BLMIS accounts, while the recoupment credit argument was based on the Lustig Defendants' investment of those withdrawn funds in a feeder fund. In the view of the Bankruptcy Court, the determination that these were separate transactions made recoupment inapplicable.

On July 17, 2017, Defendants filed two motions with the Court seeking leave to appeal the Bankruptcy Decision. Dkt. 17-cv-4592, Dkt. No. 3; Dkt. No. 17-cv-4752, Dkt. No. 3. For the reasons explained below, those motions are denied.

## III.    LEGAL STANDARD

District courts have jurisdiction over appeals from interlocutory orders of a bankruptcy court. *See* 28 U.S.C. § 158(a). The district court has discretion to determine whether leave to appeal is warranted. *See Gibson v. Kassover,* 343 F.3d 91, 94 (2d Cir. 2003). In evaluating requests for leave to appeal under 28 U.S.C. § 158(a), courts apply the three-part test codified in 28 U.S.C. § 1292(b). *See Picard v. Estate of Madoff*, 464 B.R. 578, 582 (S.D.N.Y. 2011).

Under that standard, the movant must first demonstrate that the order it seeks to appeal involves a "controlling question of law" in which reversal of the bankruptcy court's order would either terminate the action or materially affect the outcome of the litigation. *In re Adelphia Commc'ns Corp.,* 333 B.R. 649, 658 (Bankr. S.D.N.Y. 2005). The question must "refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Id.* at 658 (internal citations omitted). The second prong under 28 U.S.C. § 1292(b) requires that there be a "substantial ground for a difference of opinion," which "must arise out of a genuine doubt as to the correct applicable legal standard relied on in the order." *Id.* (citing *In re Worldcom, Inc.*, No. M-47, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003)). "Genuine doubt exists where '(1) there is conflicting authority on the issue or (2) the issue is particularly difficult and of first impression.'" *Estate of Madoff*, 464 B.R. at 582 (quoting *Enron Corp. v. Springfield Assocs., LLC (In re Enron Corp.),* No. 01-16034, 2006 WL 2548592, at *4 (S.D.N.Y. Sept. 5, 2006)). Third, the movant

must show that the appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Finally, leave to appeal an interlocutory order should be granted "only in exceptional circumstances that overcome the general aversion to piecemeal litigation and justify departing from the basic policy of postponing appellate review until after the entry of a final judgment." *Estate of Madoff*, 464 B.R. at 582-83 (citing *In re Bernard L. Madoff Investment Sec. LLC (In re Madoff)*, No. 11-MC-0012, 2011 WL 3897970, at \*3 (S.D.N.Y. Aug. 31, 2011) (internal punctuation marks omitted)). The movants have the burden of showing that all three criteria are met. *See In re Poseidon Pool & Spa Recreational, Inc.*, 443 B.R. 271, 275 (E.D.N.Y. 2010). Courts in this district have described the three prerequisites of 1292(b) as creating "a significant hurdle" for those seeking leave to appeal an interlocutory order. *In re Barnett*, No. 16-cv-436, 2016 WL 3944482, at \*1 (S.D.N.Y. July 18, 2016). Accordingly, district courts must "exercise great care in" choosing to grant a party leave to file an interlocutory appeal. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (citing *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distribution Corp.*, 964 F.2d 85, 89 (2d Cir. 1992)). Ultimately, courts "have broad discretion to deny certification even where the statutory criteria are met." *MF Glob. Holdings Ltd. v. Allied World Assurance Co.*, No. 17-cv-742, 2017 WL 2819870, at \*5 (S.D.N.Y. June 29, 2017) (quoting *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 370 (S.D.N.Y. 2008)).

## IV. DISCUSSION

The Defendants' proposed appeal does not present "pure" questions of law that the Court can decide quickly without reviewing the record. Instead, it includes fact-intensive inquiries that are not appropriate for interlocutory appeal. *See e.g., Morris v. Flaid*, 511 F. Supp. 2d 282, 315 (E.D.N.Y. 2007) (holding that "mixed questions of law and fact" are not appropriate for interlocutory review) (citations omitted). Here, the Bankruptcy Court treated the Trustee's motion to strike affirmative

defenses as a motion for summary judgment, and analyzed a substantial factual record in reaching its conclusion. As a result, none of the issues on appeal present a pure question of law, and if it permitted the appeal, "[t]he Court would thus have to examine the bankruptcy court's factual determinations as well." *In re Olympic Prop. Partners, LLC*, 566 B.R. 334, 340 (S.D.N.Y. 2017).

To reach its conclusions regarding the Defendants' proposed equitable affirmative defenses, the Bankruptcy Court assumed certain facts. However, in connection with its analysis, the Bankruptcy Court evaluated, among other things, the nature of the Defendants' investments, how those investments compared with those made by BLMIS feeder funds, and the various settlements that the Trustee has entered into with those funds. In doing so, the Court reviewed the credits that each fund received as part of their settlements with the Trustee, and analyzed its findings in the context of the multitude of BLMIS-related proceedings that the Bankruptcy Court has been presiding over for many years. An appeal of the Bankruptcy Decision would require this Court to similarly analyze the facts surrounding the Lustig Defendants' transfers, and to review the specific settlement agreements and factual circumstances of other related cases. In addition, the Bankruptcy Court's determination that the recoupment defense was unavailable to Lustig and the Lustig Trust rested on a factual determination that the Trustee's claims related to a different transaction than the transactions that the Lustig Defendants argued were the basis for their recoupment defense. Bankruptcy Decision at 13-14. Because the issues Defendants seek to raise on appeal "involve applications of law to an extremely specific set of facts," the Defendants' appeal is not appropriate for interlocutory review. *In re Facebook*, 986 F. Supp. 2d at 531-32.

Even if the appeal satisfied the statutory requirements for granting leave to appeal, the Court expects that it would still deny Defendants' motions, because the Court does believe that the proposed appeal presents the kind of "extraordinary circumstances" that would warrant appellate review prior to entry of a final judgment in this case. "An interlocutory appeal is not an appropriate

vehicle for early review of difficult rulings in hard cases." *Estate of Madoff*, 464 B.R. at 583.

Petitioners acknowledge at the outset of their briefs that these cases are "unlike any other case" brought by the Trustee, and are "totally unique." The Court believes that the *sui generis* nature of their request makes it particularly inappropriate for interlocutory review.

## V.     CONCLUSION

Because Defendants do not meet the first prong of the standard for granting an interlocutory appeal, and because no exceptional circumstances are present, Defendants' motions for leave to appeal are DENIED.

The Clerk of Court is directed to terminate the motions pending at Dkt. No. 3 in both 17-cv-4952 and 17-cv-4972, and to close both cases.

SO ORDERED.

Dated: October 24, 2017
      New York, New York

_____
GREGORY H. WOODS
United States District Judge